**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>        Plaintiff,<br><br>    vs.<br><br>VICTOR YU, D/B/A VISCO INTERNATIONAL, LTD., CURRENCY TRADING CLUB AND VICTORY FX CLUB, AND VFRS, LLC,<br><br>        Defendants. | Case No.: 12-CV-3921 YGR<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION** |

On July 26, 2012, Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") filed a Complaint for Injunctive and Other Equitable Relief and Penalties Under the Commodity Exchange Act ("Complaint") against Defendants Victor Yu ("Yu"), d/b/a Visco International Ltd., Currency Trading Club and Victory FX Club, and VFRS, LLC ("VFRS") (collectively, "Defendants") seeking injunctive and other equitable relief for violations of the Commodity Exchange Act (the "Act") as amended by the Food, Conservation and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§701-774, 124 Stat. 1376 (enacted

July 21, 2010), to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).

Specifically, the CFTC's Complaint alleged that Defendants have violated, and are continuing to violate, Section 4b(a)(2)(A) and (C) of the Act, as amended, 7 U.S.C. §§ 6b(a)(2)(A), (C), and, in connection with conduct on or after October 18, 2010, Commission Regulation ("Regulation") 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2011).  The Complaint also alleges that Yu has violated Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb), and Regulation 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i) (2011).

On July 27, 2012, this Court entered an *Ex Parte* Temporary Restraining Order prohibiting the withdrawal, transfer, removal, dissipation, concealment, or disposition of Defendants' assets, prohibiting the destruction of or prevention of CFTC access to Defendants' books and records, and providing for other relief.

This matter now comes before the Court on Plaintiff's Motion for an Order of Preliminary Injunction, filed July 26, 2012, and set for hearing on August 10, 2012, at 10:00 a.m. pursuant to the Court's July 27 Order.  The record before the Court indicates that Defendants have been served with the summons and complaint, the July 27 Order, and all papers in support of the preliminary injunction.  Defendants did not appear at the hearing.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Commission's Motion for Preliminary Injunction.  It appears to the satisfaction of the Court that there is good cause to believe Defendants have engaged in violations of the Act.  Specifically, it appears that there is good cause to believe that Defendants have violated Section 4b(a)(2)(A) and (C) of the Act, as amended, 7 U.S.C. §§ 6b(a)(2)(A), (C), and, in connection with conduct on or after October 18, 2010, that Defendants

have violated Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2012), and that Yu has violated Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb), and Regulation 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i) (2012). Consequently, the Court is satisfied that this is a proper case for granting a preliminary injunction to preserve the *status quo*, protect Defendants' clients, as well as the trading public at large, from further loss and damage, remove the danger of further violations of the Act and the Regulations, and enable the Commission to fulfill its statutory duties.[1]

## SUMMARY OF EVIDENCE PRESENTED BY THE COMMISSION

**A.  Solicitation Fraud**

On or before August 2009, Yu and VFRS, by and through Yu, began soliciting prospective clients for the purpose of trading forex for the clients' individual accounts. *See* Appendix of Declarations and Exhibits (Dkt. No. 17): Declaration of Martin Benik ["Benik Dec."] ¶ 4; Declaration of Raymond Dryer ["Dryer Dec."] ¶ 3-4; Declaration of Darren Haas ["Haas Dec."] ¶ 4-5; Declaration of Joseph J. Patrick ["Patrick Dec."] ¶ 9. Yu claims to use an "algorithm software program" he developed that determines favorable trades and places those trades in clients' accounts. *Id.*: Benik Dec. ¶ 4; Dryer Dec. ¶ 3; Haas Dec. ¶ 4-5; Patrick Dec. ¶ 9, 27. Yu tells

---

[1] For purposes of this Order, the following definitions apply:

  a.  "Assets" means any legal or equitable interest in, right to, or claim to any real or personal property, including but not limited to chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts including bank accounts and accounts at financial institutions, credits, receivables, lines of credit, securities, contracts including spot and futures contracts, insurance policies, and all cash, wherever located.

  b.  "Document" is synonymous in meaning and equal in scope to the usage of the term in FED. R. CIV. P. 34(a) and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

  c.  "Defendants" refers to Victor Yu, VFRS, LLC, and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee, or attorney of Defendants, and any person acting in concert or participation with Defendants who receives actual notice of this Order by personal service or otherwise, including electronic mail, facsimile, United Parcel Service, or Federal Express.

3

clients that he has worked for Charles Schwab for ten years and spent several years developing his software trading program. *Id.*:Dryer Dec. ¶ 3; Patrick Dec. ¶ 18, 27. Yu has told at least some prospective clients that his business name was CTC or VFC. *Id.*: Declaration Tobe Beth Bassior ["Bassior Dec."] ¶ 3; Dryer Dec. ¶ 4.

To solicit new clients, Yu and VFRS, by and through Yu, hold face-to-face meetings with prospective clients in various clients' homes. *Id.*: Bassior Dec. ¶ 3; Benik Dec. ¶ 4, 6; Dryer Dec. ¶ 3; Haas Dec. ¶ 4-5; Patrick Dec. ¶ 9, 27. Defendants obtain leads primarily through word-of-mouth. *See id.*: Bassior Dec. ¶ 3; Benik Dec. ¶ 3; Dryer Dec. ¶ 3, 7; Haas Dec. ¶ 3; Patrick Dec. ¶ 9. Yu asks for referrals from existing clients and frequently asks clients to invite their friends and acquaintances to meetings at their homes. *Id.*: Dryer Dec. ¶ 3; Patrick Dec. ¶ 18, 24, 34. In exchange for referring new clients, Yu promises existing clients a referral fee or a percentage of any profits earned in the new clients' accounts. *Id.*: Benik Dec. ¶ 14; Dryer Dec. ¶ 7; Patrick Dec. ¶ 24, 34. At these meetings, Yu explains how the software allegedly places trades automatically in forex accounts. *Id.*: Benik Dec. ¶ 4; Dryer Dec. ¶ 4; Haas Dec. ¶ 4-5. Yu also shows prospective clients account statements with very high returns that they claim resulted from trading pursuant to the software. *Id.*: Patrick Dec. ¶ 19, 27.

Additionally, Yu has made the following misrepresentations in his solicitations of clients and prospective clients:

- Yu's software makes forex trading "extremely safe" and prevents clients from ever losing their principal. *Id.*: Dryer Dec. ¶ 4; Bassior Dec. ¶ 4; Patrick Dec. ¶ 27.
- Yu's software has successfully predicted activity in the currency markets back to the 1920s. *Id.*: Patrick Dec. ¶ 9.

4

- Defendants have earned a positive return on all trades made pursuant to Yu's software and clients are guaranteed that they will not have a losing trade.  *Id.*:Benik Dec. ¶ 4.
- Clients may expect to earn annual returns ranging from 20-100% if they allow Yu to trade their accounts.  *Id.*: Benik Dec. ¶ 4; Patrick Dec. ¶ 18.
- Yu's software is so effective that Warren Buffet has expressed an interest in purchasing it.  *Id.*: Haas Dec. ¶ 4.

In reality, Yu knew or acted in reckless disregard of the facts that all forex trading is risky and that it is impossible to guarantee trading profits or annual returns for a forex account.  *Id.*: Patrick Dec. ¶ 50.  Additionally, Yu knew that Defendants executed numerous losing trades in clients' accounts and that most of Defendants' clients lost funds that Defendants traded for them.  *Id.*: Patrick Dec. ¶ 44.  Defendants also never disclosed to their clients that they were required to be registered with the Commission to trade client accounts.  *Id.*: Dryer Dec. ¶ 4; Patrick Dec. ¶ 28.

Once prospective clients expressed an interest in having Defendants trade forex for them, the clients signed a "Customer Agreement."  *Id.*: Bassior Dec. ¶ 4; Dryer Dec. ¶ 5.  The agreement was written on VIL letterhead and specified that the clients would pay Defendants a "service fee" of 30% of any net profits earned from Defendants trading their account due the first and fifteenth of every month.  *Id.*: Bassior Ex. A; Patrick Ex. C.  Although the client agreement listed a minimum investment of $100,000, most clients invested $30,000-50,000.  *Id.*: Bassior Dec. ¶ 5; Dryer Dec. ¶ 5, 7, 11; Haas Dec. ¶ 6; Patrick Dec. ¶ 10.  After clients signed the Customer Agreement, Yu directed them to open and fund an account with a particular retail foreign exchange dealer ("RFED") and then provide Yu with their personal log-in and password information so that Yu could "hook up" the trading software to the account.  *Id.*: Bassior Dec. ¶ 5; Benik Dec. ¶ 7; Dryer Dec. ¶ 4; Haas Dec. ¶ 6; Patrick Dec. ¶ 10, 29.  Yu told clients he had negotiated a special deal with

5

the RFED whereby Yu's clients would not be charged commissions on the trades placed in their accounts by his forex trading software. *Id.*: Dryer Dec. ¶ 4. Yu charged some clients an installation fee to connect his software to their home computers. *Id.*: Benik Dec. ¶ 5, 8-9; Haas ¶ 7; Patrick Dec. ¶ 11. Defendants' clients did not sign powers of attorney or otherwise provide the RFED with documentation authorizing any Defendant to access their accounts. *Id.*: Patrick Dec. ¶ 43.

Defendants frequently communicated with their clients by telephone, Skype, and email. *Id.*: Bassior Dec. ¶ 6; Dryer Dec. ¶ 6; Patrick Dec. ¶ 23. In all, at least 100 clients have set up forex trading accounts through the RFED specified by Yu and allowed Defendants to place trades in those accounts. *Id.*: Patrick Dec. ¶ 42. Each of those clients had an individual net worth of $5 million or less. *See id.*: Bassior Dec. ¶ 2; Benik Dec. ¶ 2; Dryer Dec. ¶ 2; Haas Dec. ¶ 2.

**B.     Defendants' Trading**

After their accounts were opened, many of the clients initially received profits. *Id.*: Bassior Dec. ¶ 6; Dryer Dec. ¶ 6; Patrick Dec. ¶ 15, 23. Yu notified clients of their account status via email or over the telephone on a regular basis and requested that clients remit checks for the service fees due under the Customer Agreement. *Id.*: Dryer Dec. ¶ 10; Patrick Dec. ¶ 15, 30. Yu instructed clients to make these checks payable either to Yu or to VFRS. *Id.*: Dryer Dec. ¶ 6; Patrick Dec. ¶ 15, 32. After several months of trading, however, most clients experienced losses. *Id.*: Bassior Dec. ¶ 6; Patrick Dec. ¶ 15, 25. When the clients expressed concerns to Yu about these losses, Yu attempted to reassure them by telling them that the software would automatically place hedge trades that would protect their accounts from additional losses and that their accounts would recover from any losses. *Id.*: Bassior Dec. ¶ 6. Yu also told some concerned clients in March 2011 that international events including the European debt crisis and the major earthquake in Japan were

6

causing the currency markets to become unstable and affecting the success of the software program. *Id.*:Dryer Dec. ¶ 10; Patrick Dec. ¶ 25.  He told other clients at around that time that the software had placed trades involving the Chinese Yuan that would soon begin to show significant returns. Wade Dec. ¶ 11.  Yu assured clients that as soon as the currency markets stabilized, he would personally day trade their accounts, which would allow them to recover their losses. *Id.*: Patrick Dec. ¶ 17, 25.

However, despite Yu's assurances, clients' accounts continued to suffer losses until the clients either closed out their accounts or their account balances reached zero and any remaining positions were closed out by the RFED. *Id.*:Bassior Dec. ¶ 10; Benik Dec. ¶ 13; Patrick Dec. ¶ 17, 25.  Overall, clients lost a total of $2,148,328.77. *Id.*: Patrick Dec. ¶ 44.

On or about July 2011 when one client questioned Yu regarding the losses in her account, Yu blamed the losses on actions by the RFED. *Id.*: Bassior Dec. ¶ 8.  He told the client not to log into her account for several days because he wanted to gather evidence to prove that the RFED was logging into and manipulating the account. *Id.*:Bassior Dec. ¶ 8.  In fact, the RFED was not logging into or manipulating the account in any manner. *Id.*: Patrick Dec. ¶ 45.  Two days later, Yu told the same client that all trades in the account had been closed by the RFED and that the account had a zero balance. *Id.*: Bassior Dec. ¶ 10.  Yu blamed these losses on a system outage at the RFED, but no system outage at the RFED had occurred. *Id.*:Bassior Dec. ¶ 10.

## STANDARDS APPLICABLE TO THE MOTION

Section 6c(b) of the Act, 7 U.S.C. § 13a-1(b) (2006), provides in pertinent part that "[u]pon a proper showing, a . . . temporary injunction . . . shall be granted without bond."  Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), Plaintiff seeks a preliminary injunction against

Defendant prohibiting, among other things, any future violations of the sections of the Act and the Regulations under which they have been charged.

The injunctive relief contemplated in this portion of the Act is remedial in nature, and is designed to prevent injury to the public and to deter future illegal conduct.  Unlike private actions, which are rooted in the equity jurisdiction of the federal court, an agency's suit for injunctive relief is a creature of statute.  The Commission's "[a]ctions for statutory injunctions need not meet the requirements for an injunction imposed by traditional equity jurisprudence." *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979); *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983).  Instead, the CFTC is entitled to injunctive relief upon a *prima facie* showing that a violation of the law has occurred and that "there is some reasonable likelihood of future violations." *Hunt*, 591 F.2d at 1220.; s*ee also Fed. Election Comm'n v. Furgatch*, 869 F.2d 1256, 1261 (9th Cir. 1989) (in cases involving statutory injunctions on the basis of past violations, party moving for the injunction must show only that there is a "likelihood" of future violations); *CFTC v. British Am. Commodity Options Corp.*, 560 F.2d 135, 141 (2nd Cir. 1977) ("well-established" that agency need only show reasonable likelihood wrong will be repeated for injunctive relief).

"While past misconduct does not lead necessarily to the conclusion that there is a likelihood of future misconduct, it is highly suggestive of the likelihood of future violations." *Hunt*, 591 F.2d at 1220 (internal citation omitted).  In determining the likelihood of future violations, a court must look to the totality of the circumstances, including whether the violations require a showing of knowledge of wrongdoing, were persistent or recurrent, or occurred over a long span of time, and whether the circumstances indicate that the defendant is in a position that makes future violations likely to occur.  *See Hunt, 591 F.2d at 1220; British Am. Commodity Options Corp.*, 560 F.2d at 142; *S.E.C. v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).  "When the violation has been founded

on systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future misconduct." *Hunt*, 591 F.2d at 1220.  Moreover, because the commodities trading area is a highly regulated, "highly sensitive area of public trust," enjoining activity by unregistered advisors, any circumstances that indicate the defendant might repeat or continue his activity in violation of the registration requirements strongly favor entry of an injunction. *British Am. Commodity Options*, 560 F.2d 135, 142 (2d Cir. 1977)

## DISCUSSION

**A.     Jurisdiction and Venue**

The evidence and pleadings indicate that the Court has jurisdiction over the parties and subject matter of this case.  Section 6c of the Act authorizes the CFTC to seek injunctive relief in a district court whenever it appears to the CFTC that a person or entity has engaged, is engaging, or is about to engage in any act or practice that constitutes a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder.  Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transacted business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District.

**B.     *Prima Facie* Violations of The Act**

The record filed in support of the Commission's Motion constitutes a *prima facie* showing that Defendants violated certain provisions of the Act and the Regulations and that a reasonable likelihood of a future violation exists.  Therefore, the issuance of the preliminary relief requested by the Commission is justified.

Section 4b(a)(2)(A) and (C) of the Act prohibits cheating, defrauding, and deception in connection with off-exchange foreign currency ("forex") transactions that occurred on or after June

9

18, 2008. The Commission has presented evidence that Defendants made material misrepresentations and omissions of material facts to the prospective and actual clients with the requisite scienter. Such conduct is a violation of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A) and (C).

Similarly, Regulation 5.2(b)(1) and (3), which apply to forex transactions occurring on or after October 18, 2012, prohibits the use of the mails or any instrumentality of interstate commerce in connection with fraudulent conduct. The Commission has presented evidence that Defendants used instrumentalities of interstate commerce including the telephone and email connection with their fraudulent conduct. Such conduct is a violation of Regulation 5.2(b)(1) and (3).

Section 2(c)(2)(C)(iii)(I)(bb) prohibits any person from exercising discretionary trading authority or obtaining written authorization to exercise written trading authority over any account for or on behalf of a non-eligible contract participant ("ECP"), unless registered with the Commission, with certain exceptions not applicable here. Regulation 5.1(e)(1) defines a commodity trading advisor ("CTA") as any person who exercises discretionary trading authority over any account or on behalf of any person that is not an eligible contract participant as defined in section 1a(12) of the Act, in connection with retail forex transactions. Regulation 5.3(a)(3)(i) requires any CTA, as defined in Regulation 5.1(e)(1), to register with the Commission.

The Commission has presented evidence that Yu exercised discretionary trading authority over forex trading accounts opened by non-ECPs without being registered with the Commission as a CTA. This conduct violates Section 2(c)(2)(C)(iii)(I)(bb) and Regulation 5.3(a)(3)(i).

Because the Commission has made a *prima facie* showing that Defendants have violated Section 4b(a)(2)(A) and (C) of the Act and Regulation 5.2(b)(1) and (3), and that Yu has violated

Section 2(c)(2)(C)(iii)(I)(bb) of the Act and Regulation 5.3(a)(3)(i), preliminary injunctive relief is proper, warranted and appropriate in this case.

**ORDER OF PRELIMINARY INJUNCTION AND INTERIM EQUITABLE RELIEF**

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1.  Defendants and all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of Defendants, and all persons insofar as they are acting in concert or participation with Defendants who receive actual notice of this order by personal service or otherwise, shall be prohibited and restrained from, until further order of the Court, directly or indirectly:

    a.  Engaging in any conduct in violation of Section 4b(a)(2)(A) and (C) of the Act and Regulation 5.2(b)(1) and (3), including, but not limited to, making material misrepresentations and omission in connection with forex trading; and

    b.  Engaging in conduct in violation of Section 2(c)(2)(C)(iii)(I)(bb) of the Act and Regulation 5.3(a)(3)(i), including, but not limited to, placing forex trades for none-ECPs.

2.  Defendants are further restrained, enjoined, and prohibited, until further order of the Court, from directly or indirectly:

    a.  trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act as amended, to be codified at 7 U.S.C. § 1a), including, but not limited to, trading for themselves or their clients;

    b.  Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2011)) ("commodity options"), security futures products, and/or foreign currency (as

11

described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act as amended by the Dodd-Frank Act, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal accounts or for any account in which they have a direct or indirect interest;

      c.      Having any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts traded on their behalf;

      d.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

      e.      Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

      f.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and

      g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

3.      Defendants are restrained and enjoined from, directly or indirectly, withdrawing, transferring, removing, dissipating, concealing, assigning, pledging, leasing, loaning, encumbering, disbursing, converting, selling, liquidating, alienating, or otherwise disposing of any funds, assets,

or other property, wherever located, including funds, assets, or other property held outside the United States, except as ordered by the Court. The assets affected by this Paragraph shall include both existing assets and assets acquired after the effective date of this Order, as well as accounts not specifically identified below.

4. Pending further order of this Court, any bank, financial or brokerage institution, entity, or person that holds, controls, or maintains custody of any funds, assets, or other property of Defendants, or has held, controlled, or maintained custody of any funds, assets, or other property of Defendants, and who receives notice of this Order by any means, including facsimile, electronic mail, United Parcel Service, or Federal Express, shall:

   a. prohibit Defendants and any other person from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of any such assets, except as directed by further order of the Court;

   b. deny Defendants and all other persons access to any safe deposit box that is:

      1. titled in the name of or maintained by Defendants, either individually, jointly, or in any other capacity, including safe deposit boxes titled in the name of or maintained by nominees of Defendants; or

      2. otherwise subject to the control of or access by Defendants; and

   c. cooperate with all reasonable requests of the CFTC relating to implementation of this Order, including producing records related to Defendants' accounts and Defendants' businesses.

The Court further **ORDERS**:

1. Service of this Order upon Defendants shall be in any manner approved for service of a summons and complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure.

2. Defendants and all persons or entities who receive notice of this Order by personal service or otherwise, including electronic mail, facsimile, United Parcel Service, or Federal Express, are restrained and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing, or disposing of, in any manner, directly or indirectly, any documents that relate to the business operations or practices, or the business or personal finances, of Defendants.

3. Representatives of the CFTC be allowed immediately to inspect the books, records, and other documents of Defendants and their agents including, but not limited to, electronically stored data, tape recordings, and computer discs, wherever they may be situated and whether they are in the possession of Defendants or others, and to copy said books, records, and other documents, either on or off the premises where they may be situated.

4. Service of this Order upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of Defendants, or that may be subject to any provision of this Order may be made by any means, including personal service, United Parcel Service, Federal Express, or other commercial overnight service, email, facsimile, Rule 5 of the Federal Rules of Civil Procedure, or Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents.  Robert Howell, Jennifer E. Smiley, and Joseph Patrick, all employees of the CFTC, are hereby specially appointed to serve process, including of this Order and all other papers in this case.

5. Pursuant to Section 6c(b) of the Act, 7 U.S.C. § 13a-1(b), no bond need be posted by the Commission, which is an agency of the United States of America.

6. Defendants shall serve all pleadings, correspondence, notices required by this Order, and other materials on the CFTC by delivering a copy to Robert Howell, Trial Attorney, Division

of Enforcement, U.S. Commodity Futures Trading Commission, 525 W. Monroe St., Suite 1100, Chicago, Illinois, 60661 or by filing such pleadings or other materials electronically with the Court.

This Order shall remain in full force and effect until further order of this Court upon application, notice, and an opportunity to be heard, and that this Court retains jurisdiction of this matter for all purposes.

This case is currently set for an initial case management conference on November 2, 2012, at 2:00 p.m.  The Court will address the status of the preliminary injunction at that time.  The parties should submit a status report regarding the preliminary injunction along with their Joint Case Management Statement 14 days in advance of the conference, consistent with this Court's Standing Order in Civil Cases.  *See* Scheduling Order issued July 26, 2012 (Dkt No. 14.)

**IT IS SO ORDERED**.

**Date: August 10, 2012**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**